**HODGE et al. v. ELLIS.**

No. 15504.

Court of Civil Appeals of Texas.

Fort Worth.

April 30, 1954.

Rehearing Denied May 28, 1954.

John R. Lindsey, Jacksboro, C. T. Gettys, Nolen L. Sewell, Decatur, for appellants.

J. Roy Creighton, Mineral Wells, John W. Moore, Jacksboro, W. E. Fitzgerald, Wichita Falls, for appellee.

MASSEY, Chief Justice.

From a judgment for the husband of a deceased wife against the deceased's Executor under her will and against her heirs establishing an interest in real estate and construing the will, the Executor and heirs appeal. Judgment affirmed.

A. A. Ellis filed suit against the Executor of the will of his deceased wife, Willie Lesca Ellis, joining as defendants in said suit the other beneficiaries under the will, to-wit: the sister and niece and grandnephew of the deceased. A. A. Ellis was a devisee by said will only to the extent of a life estate, or until his remarriage, in and to the deceased's interest in certain real estate in Jack County, Texas, hereinafter termed the Stewart property. The will devised real estate in Wise County, Texas, which indisputably was the separate property of the deceased though it was not specifically referred to by the will as such. The will devised two other parcels of real estate in Jack County, hereinafter termed the Wilson property and the Walker property, each parcel being described by metes and bounds and referred to in its entirety as a subject of devise, and as referred to as a devise that it vest in fee simple in a devisee. The Stewart property was likewise referred to as an entirety as a subject of devise, and as referred to as a devise that it vest in fee simple in a devisee subject to the estate for life, or until remarriage, in A. A. Ellis. The will devised any remainder of the deceased's property, real, personal or mixed, to Nettie Mae Hodge, the sister, and specifically devised the deceased's community interest in the homestead to this sister. The will provided for a forfeiture of rights by any person taking under the will who in any manner contested or questioned the will or any clause thereof in any judicial proceeding.

Ellis' suit was a suit in trespass to try title to real estate in so far as the Stewart, Wilson and Walker properties were concerned. He alleged that these properties were community property and that he owned an undivided 50% interest in each. He likewise sued for a construction of the will, alleging that the life estate in and to the Stewart property given him by the will was intended by his deceased wife to extend only to the community interest and estate owned by her therein. He further alleged that it was the intent of his deceased wife that certain personal property which stood in his name should be excluded from the operation of her will. He further sued alleging that he claimed as his homestead the property owned by him and his wife in which he lived, and set up allegations that he held a certain separate property interest as well as a certain community interest in the homestead, the separate property interest having vested through inheritance according to his claim. The will devised the deceased's community interest in the homestead as already noted.

The Executor, Wallace C. Hodge, and the beneficiaries, Nettie Mae Hodge, Margie Nell Motley and Lavon Motley, answered the petition of plaintiff Ellis, and plead "not guilty" and alleged that the Stewart, Wilson and Walker properties were the separate property of the deceased, that they acknowledged that the plaintiff was entitled to the use of the homestead occupied as such by the plaintiff though the deceased's interest therein subject thereto had passed by the will to Mrs. Hodge. They also alleged that under the provisions of the will and by reason of the fact that the suit of the plaintiff constituted a contest

and attack upon said will the plaintiff had forfeited his right under the will to a life estate in the Stewart property, and that since the plaintiff had chosen to claim his homestead rights he had made an election within the contemplation of the will which also operated to forfeit such right to the Stewart property. By way of a counterclaim, the defendants alleged that the plaintiff was holding and claiming as his own separate property an automobile and certain funds and personal property which in truth constituted deceased's separate property, or community property, or in part separate property and in part community property, and they prayed for an adjudication upon this property. This property included that which Ellis claimed his deceased wife intended to exclude from the operation of the will. They prayed for an accounting, and also prayed for the partition of any property which the court might find was community property other than the homestead, and that the right, title and interest in and to all properties be established by decree of the court, and for general relief.

Following a trial before the court, without a jury, a judgment was entered upon the part of the suit relating to the ownership of the Stewart, Wilson and Walker properties and the decree of the court was to the effect that each of these properties was community property, and that plaintiff Ellis was vested with a one-half fee simple estate in and to the properties. The decree further recited that under the will Ellis was vested with a life estate or until his remarriage in his wife's estate in (the other one-half of) the Stewart property. The court found that at the date of death of the deceased the plaintiff had in his possession community property and funds totaling in value the amount of $2,500, and he decreed that defendant Nettie Mae Hodge, devisee of the deceased's interest therein, have and recover of the plaintiff the amount of $1,-250. All other relief either party sought was specifically denied.

The defendants excepted to this judgment and have perfected an appeal to this court. This judgment we affirm.

Since primarily the dispute in the case was premised upon the contention of the appellee that he and his deceased wife owned as community property the properties known as the Stewart, Wilson and Walker properties in Jacksboro, Jack County, Texas, contrary to the contention of the Executor and the heirs that such properties were the separate properties of the deceased, we will primarily devote our attention to the solution of that question.

Appellee Ellis and his wife, Willie Lesca Ellis, were married in 1937. She made her last will and testament in 1948. She died in 1950. At the time she married she was the owner of certain property in Wise County, Texas. She still owned all this property at date of her death with the exception of one parcel, being a house located at Decatur, Texas, which she sold in late 1945 or early 1946 for $5,500. By inference of the testimony upon the trial we gather that at least some of the property in Wise County was income producing property, probably from rentals. The amount of income, if any, from the property in Wise County is not shown in the record, and neither is anything shown from which it could be approximated for any specific period of time.

After the marriage the appellee and his wife embarked for varying periods in varying enterprises. They farmed, chicken-ranched, operated a cafe, and operated tourist courts and other types of rental property. Mrs. Ellis worked some at a hospital or hospitals for a period. Appellee did carpenter work, particularly around Mineral Wells, Texas, for a period. There was no testimony in the record which could enable anyone to show the amount of income, if any, from any of these enterprises or employments, nor from the whole of them, and the income could not be approximated for any material period of time.

By common consent or agreement appellee kept a bank account in his name which he treated as one in which his wife had no interest, and his wife did likewise with at least one account which she treated as her

own. At no stage of the trial were the bank records of these accounts introduced by either party, and at no particular time of the marriage relationship was it ever shown what either party's balance was in any bank, nor was any part thereof traced to its origin. Neither was there any proof by anyone as to just how much separate property in the form of funds, securities, etc., either the appellee or his wife had immediately prior to and at the time of their marriage. If she had any funds in a bank in her name, then there would be a presumption that such funds were her separate property under provisions of T.R.C.S.1925, Art. 4622. The same thing would be true as to any account in any bank at any time where it stood in her name. However, when, as was true in this case, where there were no funds on deposit to the separate account of a deceased wife or any stocks, bonds, etc., as of the date of her death (this appearing from the inventory and appraisement filed in the probate court by her Executor) and where the proof was that she and her husband had for four years been receiving from rents an income of approximately $420 per month, and which was supplemented from her own labours in other work and employment, going into her account and thence in part into the retirement of indebtedness on the Stewart, Walker and Wilson properties, which indebtedness was fully paid off prior to date of her death,—these facts constituted proof enabling the trial court to find that at least the income from the rents had gone into the retirement of the indebtedness on the properties from which the rental revenues were received. The proof was to the effect that the payments upon the indebtedness came from the separate bank account of the deceased. Of course it would have been possible for the wife to have wasted all funds of the community that she received, using none of them in the acquisition of the properties, but to say the least, such was improbable. We believe that appellants would have the burden cast upon them to prove this, as there could be no presumption that she did such a thing.

The first item of Jacksboro, Texas, property to be purchased was the Stewart property, also known as the Stewart Tourist Courts. Revenue from rents on the property averaged better than $200 per month. It was purchased in January of 1945 for a total consideration of $9,000, $3,000 by cash and the balance of $6,000 by way of a note secured by a lien on the property, payable at the rate of $200 per month. This was rental property. The deed was made out to Mrs. Ellis as her separate property, and the note was signed by her. The cash amount paid down on the transaction was by Mrs. Ellis and presumably by her check on an account carried in her name. The deed did not recite whether the cash paid initially was separate property or community property.

The second item of property purchased was the Walker property, which was acquired in February, 1946. This property was an apartment building in Jacksboro. There were three apartments and the revenue from the apartments amounted to approximately $120 per month. This property was purchased for a total consideration of $8,000, $5,000 by cash and the balance of $3,000 by way of a note secured by a lien on the property, payable at the rate of $50 per month. The deed was made out to Mrs. Ellis as her separate property, and the note was signed by her. The cash amount paid down on the transaction was paid by Mrs. Ellis with a check, presumably upon an account carried in her name. The deed did not recite whether the cash paid initially was separate property or community property.

The third item of property purchased was the Wilson property, which was acquired in December of 1946. This property was rental property of apartment house character. The rents from this property averaged $100 per month from date of purchase. This property was purchased for a total consideration of $8,000, all cash to the grantors in the transaction. There were two deeds involved in the transaction, one reciting the total consideration of $1,000, $500 of which was stated by the deed to be

the separate property or funds of Mrs. Ellis, and the other reciting the total consideration of ten and more dollars, all of which was stated by the deed to be the separate property or funds of Mrs. Ellis. Both deeds were made out to Mrs. Ellis as her separate property. The evidence upon the transaction disclosed that the actual total consideration was $8,000, which amount Mrs. Ellis received in the form of a cashier's check from the First National Bank of Jacksboro, and which she personally delivered over to the grantor Wilson. The total amount was received from the bank as a loan, evidenced by a promissory note executed by both appellee and Mrs. Ellis, and secured by a deed of trust on the Wilson property, to purchase which the money was borrowed, and further secured by deeds of trust on the Stewart property and the Walker property. The note and the deeds of trust were executed by both the appellee and his wife.

■ Without regard to the question of whether the initial amount paid down on any of the purchases of these properties did or did not come out of Mrs. Ellis' separate estate, and without regard to whether such properties or any parts thereof were or were not the separate property of Mrs. Ellis, the rents from the properties indisputably belonged to appellee and Mrs. Ellis share and share alike as such rents constituted community property of the husband and wife. Constitution of Texas, Article 16, Sec. 15, Vernon's Ann.St.; Speer's Law of Marital Rights in Texas, p. 505, sec. 416; 23 Tex.Jur., p. 120, sec. 98. It therefore follows that since Mrs. Ellis' bank account was the depository of the rents, such depository contained community funds.

The deeds to the three parcels of real estate in Jack County, Texas, and which properties constitute those in dispute in this case, have one material recital which is common to all of them. That recital is by the grantors as to each deed to the effect that the property therein described is granted, sold and conveyed unto Mrs. Ellis, *as her separate property and estate*. Addition-

ally, in the deeds from Earl Wilson and his wife of the Wilson property are recitals as to certain amounts of money which were paid as part of the consideration for the property *out of the separate property and estate* of Mrs. Ellis.

■ It is to be remembered that property acquired in the name of either spouse during marriage, otherwise than by gift, devise, or descent, or in the exchange for separate property, is community property. Taylor v. Hollingsworth, 1943, 142 Tex. 158, 176 S.W.2d 733; Kellett v. Trice, 1902, 95 Tex. 160, 66 S.W. 51, 53. The same cases pointed out that even in cases where property was acquired and where the parties attempted to stipulate as between themselves as to its character as community or separate property that perforce there would be no such character as they might so desire or stipulate, but that the question of whether the property would be separate or community must depend upon the existence or non-existence of certain facts, which, by the rules of law establish its character.

The difficulties attendant to determination of whether property is separate or community through the application of the rules of law to the facts in given instances have been the occasion of a great deal of study and fine analysis on the part of renown scholars of the subject.

■ From the most excellent treatise on the Community Property Law of Texas, by Professor William O. Huie, found in Volume 13 of Vernon's Texas Revised Civil Statutes Annotated, beginning at page VII, and from Professor Huie's analysis of the Constitution, statutes and case holdings we note the following as principles of law applicable to this case:

1. Property bought with separate funds of a spouse is separate property. Payment of a part of the purchase price of property with separate funds gives a fractional separate interest.

2. The separate or community character of property acquired by purchase during marriage is determined by looking to the

character of the consideration given in exchange for it.

3. The beneficial ownership of property can be traced through changes in form.

4. When property acquired by purchase is taken in the name of either spouse or is recited to have been paid for by either spouse out of his or her separate property, presumptions are created in law as to the beneficial ownership of it, but in these cases parol evidence is admissible to rebut these presumptions, and where the legal presumptions from the face of the written instruments of purchase are rebutted by parol evidence, judgments are supported by proof in parol.

5. Where a conveyance of property acquired by purchase is to a wife as "her separate property" or "for her separate use and benefit", the husband's right to introduce parol evidence to rebut the presumption at law that the property is taken as the separate property of the wife is not abrogated even when he was in relation to the contract as a contracting party in such manner that he was a party privy to the contract. And in such instances, when the husband was a party privy to the contract, it is only when the testimony indisputably establishes that as between the husband and the wife they intended at the very time the property was acquired that it was to be the separate property of the wife that the character of the property as the wife's separate property is established as a matter of law.

6. It is only in the case of an innocent purchaser that the legal title to property may be held to control over the equitable title. Irrespective of the status of the legal or record title of ownership of property, proof by parol as to the equitable title, whether as the separate property of either spouse or as the community property of both, will prevail over the record of title except as against an innocent purchaser.

7. The character of purchased property, as separate or community property, is fixed at the time it is acquired, whether or not the entire purchase price is paid at the time of acquisition. If it is community property at time it is acquired, it remains community property even though the separate funds of either spouse be used to pay the purchase price debt balance or the financed part of the price. The same thing is true if it is separate property at the time it was acquired and community funds are used to pay the balance or financed part. In either case a right to reimbursement can be established by tracing funds used to pay the balances, with subrogation in some cases to rights of a seller, but the ownership of the property is not affected.

8. In an instance where property is acquired in a purchase transaction, in part for cash and in part on credit, then to the extent that the purchase price is not paid in cash at time of the acquisition it would ordinarily be presumed that in so far as the credit part is concerned it would be community property despite the fact that the cash part of the price might have been paid from the separate funds of either spouse, unless there is some provision in the papers constituting the contractual record of the transaction that it was payable from the separate funds or upon the separate credit of either spouse, and unless it also may be established that as between the spouses such was their agreement and intention at the time. In so far as is concerned the amount paid down in cash on the purchase price there would be a presumption that its character was community property unless it was stated to be the separate property of one of the spouses. In the event it was stated to be one or the other's separate property, this would create a rebuttable presumption that it actually was such spouse's separate property. In the event it was not so stated and was presumptively community property, then it could through the avenue of parol testimony be shown to nevertheless have been the separate property of one or the other of the spouses, and as so shown there would be thereby raised a presumption of a pro tanto resulting trust in favor of that spouse's separate estate. And if the

amount so paid down constituted one-fourth of the purchase price, then such spouse's separate estate would have been established of a one-fourth interest in the property.

9. Though a wife buy land on credit, and the creditor require the execution of the note evidencing the credit by the husband along with the wife because such creditor could not with only the signature of the wife upon the note enforce the balance of the purchase price out of the wife's separate estate, yet if it is possible for the court to find and it does find that the land was purchased on her separate credit then the land would be her separate estate, at least as to the credit part of the transaction, upon it being established that the husband and wife intended that such part be paid for out of her separate funds or estate, and be her separate estate.

10. In cases where the property at hand at time of dissolution of a marriage, as by death, may represent such a mixed product of separate capital and community income that it is hard to identify any particular assets or fractional interest in particular assets as being the product of the separate capital, doubts as to the character of the property are resolved in favor of ‘the community. In order to establish the character of any parts of such property as separate property of either spouse enough evidence must be introduced to prove with reasonable certainty that any particular property is the product of separate funds brought to the marriage. In the typical circumstance of bank accounts, as where one spouse maintains the account in his or her name (creating the rebuttable presumption by statute that the deposit therein constitutes the separate property of the spouse in whose name the account stands) is best observed that condition where separate funds are mixed with community funds. The presumption that the deposit constitutes the separate property of the spouse in whose name the account stands is rebutted by proof that community funds were deposited therein, and this in turn gives rise to the presumption that it was the intent of both spouses

that the separate funds were advanced to the community, with the assets contributing to the whole of the fund by way of the separate property funds included therein to be reimbursed to the estate of the spouse who contributed them to the community upon dissolution of the marriage. The right is one of reimbursement rather than of ownership of specific property.

In this case the appellants have made no attempt to establish any right of reimbursement to the deceased wife's estate of any of her separate property in funds which might have gone into her bank account, wherein she had, under the implied finding of the trial court, commingled her separate funds, if any, with community funds. Hers was the bank account used in the purchases, and in the retirement of indebtedness upon the properties purchased. Appellants base their whole case upon the separate property character of the disputed properties upon a contention that the funds in the separate bank account of the deceased were at the time of the acquisition of the Stewart and Walker properties, and thereafter, her separate property, and that the purchase of the Wilson property was upon her separate credit and paid for from her separate funds.

Appellee's burden was that of showing that the wife's separate bank account was a depository containing community funds. This burden he discharged. It was shown that rents went into the account. It was also shown that other income of the wife went into the account. Having shown this there arose the presumption that the account always contained community funds. Perhaps appellants could have proven that at some date or for some period important to the controversy the account did actually contain the wife's separate funds unmingled with any community funds. However they never attempted to make any proof to this effect. Therefore the presumption persisted that the funds therein deposited were those of the community.

Since the appellee was not a party in actual privity to the contracts in

the cases of the Stewart and Walker properties, we perceive no difference from a hypothetical situation where we would consider him to be the wife and the wife the husband, or where a husband would be dealing with third persons in his own name, receiving from them deeds to properties "as his separate property". Under such a hypothetical situation let us suppose that the husband died and his wife sought to establish that the properties were community properties in which she owned in equity a one-half interest. All that would need be shown was that she was in ignorance of the provision of the deeds reciting that the properties were conveyed to him as his separate property, and the presumption in that respect from the face of the deed would fail. Likewise, all she would be required to show in order to destroy any presumption that might appear from the face of the deeds to the effect that the consideration was paid or payable from his separate estate (in a case where it was admitted that the consideration was paid by check or checks upon an account) would be the fact that the account from which the checks issued was an account which contained community income. Under the facts of this case the situation of the parties was reversed but the proof was the same. The trial court was well warranted in finding that these properties constituted community property, since they were purchased in part at least by funds from an account used as a depository for community funds.

■ Parol evidence rebutting presumptions from recitations in a deed to the effect that consideration for the same, came from the separate property of either, or that it was conveyed to either as separate property, is not required to have the support of a pleading alleging fraud, mistake, etc. in a suit to establish the fact that the property was of a character other than recited or the consideration came from a source other than stated, for in such suits they are words of recital and not of contract. Morris v. Neie, Tex.Civ.App.Eastland, 1948, 212 S.W.2d 981, writ refused, n. r. e.; 23 Tex.Jur., p. 360, sec. 308.

■ In the case of the Wilson property the situation is somewhat different, but the trial court was well warranted in likewise finding that it belonged to the community. It was never established that as between the appellee and his wife at the time the property was acquired they had agreed and intended that the Wilson property would be the separate property of the wife, and that the credit of the transaction would be payable from her separate funds. Indeed, the contrary was established by appellee's testimony, and though he participated in the transaction to the extent of binding his credit, he was not bound by the provisions of the face of the deed in the absence of actual knowledge of and consent to its terms upon some consideration to him. Furthermore, the indebtedness was paid off from a bank account containing community funds and which under the circumstances of this case was properly deemed a depository of community funds.

Not only did the appellee obtain the decree that he wanted vesting title in him to an undivided one-half interest in and to the Stewart, Wilson and Walker properties, but the court further construed and gave effect to that portion of the will which gave him a life estate, or until his remarriage, in the Stewart property. The court having given appellee a one-half interest in this property as owner, the life estate was given him in the wife's one-half interest. The appellants contend that by so doing the trial court erred because under the provisions of the will the appellee had forfeited any right to take anything by a devise thereof because he had sued and attacked and contested the will. It appears that the will had been admitted to probate and that letters testamentary had been granted to the Executor named therein without any contest of any kind. The appellee did object to the Executor listing in their entireties the Stewart, Wilson and Walker properties as separate properties of his deceased wife in the inventory of her estate. Appellee refused to yield possession of any of these properties, and at some stage of his dispute about them with

the Executor filed his suit. He claims that suit was necessary if the Executor was to be prevented from administering his part of the property as the separate property of this deceased wife's estate. Doubtless this was true. In his pleadings he was careful not to question the validity of the will or to attack any devise therein made, or to contend that the deceased did not have capacity or authority to make the will. He contended only that the will should be construed so as to give effect to the whole of the same and all parts thereof in so far as it operated to devise property which belonged to her and which appellee contended his wife intended to pass under its authority. Appellants claim that appellee's suit to establish the community character of the Stewart, Walker and Wilson properties and appellee's interest therein constituted an act bringing into operation the forfeiture of any right as a devisee to the interest given him in the Stewart property because the language of the will clearly demonstrated an intent on the part of the deceased to treat and dispose of all such properties as her separate property.

From our examination of the language of the will we are compelled to the conclusion that at least in the case of the Wilson property (and probably as to the Walker and Stewart properties) the deceased in making her will did indisputably intend to devise the property as her separate property to her sister, Mrs. Hodge. Furthermore, we are compelled to the conclusion that she did in fact consider herself the owner of the Wilson property as her separate property at the time she made the will. As has been pointed out she was mistaken in this, but nevertheless that was her conclusion, and it was her intent to dispose of this property as her separate property by her will. The language of the deceased in the Fourth Clause of her will is as follows, with particular reference to the Wilson property, and by comparison, with her treatment of the homestead:

"I hereby give, devise and bequeath to my sister, Nettie Mae Whitaker Hodge all of that tract or parcel of land in the City of Jacksboro, Jack County, Texas, comprising * * * (here the Wilson land is identified and described) * * * together with all improvements * * * also all furniture, and fixtures located in such houses, (the buildings on the Wilson & Walker properties) they being rent property and being already furnished for such purpose; also my community interest in our homestead situated in the City of Jacksboro, Jack County, Texas, I give, devise, and bequeath to my said sister Nettie Mae Whitaker Hodge. All of the above described property to be used and enjoyed by my said sister during her natural life time and at her death to my niece Margie Nell Hodge Motley during her natural life time and at her death to my grand nephew Lavon Motley in fee simple to do with as he may deem fit and proper."

Viewing the entire will from its four corners we find no qualification, clarification or explanation which weakens our conclusion heretofore stated. Indeed, everything additional from the will and the setting in which it must be examined could, if anything, only add emphasis to our conclusion. See the case of Cheatham v. Mann, Tex. Civ.App., Galveston 1939, 133 S.W.2d 264, error refused, and the comparison of holdings of cases antecedent thereto.

The question of election is not involved in a consideration of the point urged upon forfeiture. However, we do notice that had an election been involved upon the Wilson property and wherein from the provisions relating thereto it might have been urged that it was incumbent upon the appellee to choose whether he must yield his claim to a community interest in the Wilson property if he preferred to take the life estate in the Stewart property given him by the will, the contention would necessarily fail since the deceased could not have intended such an election because she was laboring under the delusion that she owned the Wilson property as her separate property. That being so, as between these two properties, obviously the doctrine of election would have no application.

Let us hypothetically consider this situation as one where the wife owned one-half interest in and to the Wilson property and the husband the other one-half interest in and to the same property, the interest of each person constituting separate property rather than as community. In such a circumstance there would have been nothing in law prohibitive of the husband selling his separate property interest to an innocent third person wholly unbeknownst to his wife. Had this occurred shortly prior to the time the wife died leaving a will which purported to devise the entire property as her separate property it would of course be proper that the third person to whom the husband had conveyed his separate property interest sue to establish his title in a trespass to try title suit. This could not possibly be an attack upon the will, though it would probably defeat an objective of the will. It would be a suit brought in good faith to establish title to real estate. We see no occasion to differentiate the legal status of the parties in such a situation from that here presented where the property was community property and where the husband (owner of a community interest in the property constituting and amounting to a one-half interest in the equitable title) has brought the same character of suit against his deceased wife's executor. Because of the act of his wife in purportedly devising all of the property as her separate property rather than confining her devise to the interest which belonged to her, he felt it necessary to file a trespass to try title suit to protect his interests. In the absence of the establishment of some issue of bad faith on the part of the appellee in bringing the trespass to try title suit to at least one of the properties, then the suit would be a suit brought in good faith and upon probable cause and his act in bringing and prosecuting the suit would not constitute ground for forfeiture of any devise made to him by the will. Calvery v. Calvery, 1932, 122 Tex. 204, 55 S.W.2d 527, and cases there cited.

Furthermore, considered as a suit in contest of the provisions of the will in respect to the language thereof devising the Wilson, Walker and Stewart properties as separate property of the deceased, it likewise would not be a suit the purpose of which would conclusively be established as one to thwart the will of the testator. If that should be the purpose which appellee intended by his suit then the forfeiture clause would be operative. In this case, at least, such purpose is not established as a matter of law, and if raised as an issue of fact then the trial court as the trier of the fact must be deemed to have held that the appellee had no such intent and purpose in instituting and prosecuting the suit. In view of the strictness of the rule against forfeitures the appellee would have been warranted in believing that his deceased wife did not intend to devise any greater interest in the real estate in question than belonged to her. Indeed, it was the opinion of the trial court that she did not intend to devise any greater interest than belonged to her, and though we have held that she did and have overruled the trial court on that point the very situation demonstrates that appellee could have honestly believed that she had no such intention, and certainly it would be proper to hold that by his construction as to her intent he was in good faith and upon probable cause bringing his suit to ascertain the intention expressed by her in her will, the extent of her devise, and then in turn to enforce the will's terms in accordance therewith. First Methodist Episcopal Church South v. Anderson, Tex. Civ.App., Dallas 1937, 110 S.W.2d 1177, error dism.

Since the will's language devised to Mrs. Nettie Mae Hodge the deceased's community interest in the homestead "to be used and enjoyed * * * during her natural life time", and since the appellee claimed as his natural right his right to use the homestead as his home, which claim was acknowledged and accepted and yielded to the appellee, appellants contend that the appellee has made an election which operates as a forfeiture of his right under the will to take a life estate, or until remarriage, in the deceased's interest in the Stewart property. With the contention we do not agree. The situation

was not one necessitating an election on the part of the appellee because he is not tendered such estate in the Stewart property with any condition, such as for example would have been the case had the will prescribed that such estate would go to him if he yielded his homestead rights, it constituting a devise in lieu thereof. Since he is not required to yield anything or prefer one thing he might desire to have over another which perforce must be abandoned if he is to receive that which he prefers, there could be no election. 44 Tex.Jur., p. 864, sec. 286; Smith v. Butler, 1892, 85 Tex. 126, 19 S.W. 1083. It is to be noted that the right to use the homestead as such is one given a surviving spouse under the Constitution of the State, and such use is one which is not to be disposed of by a will as it is not property which may be a subject of devise as it is property (in a sense) of the surviving spouse. 22 Tex.Jur., p. 345, sec. 239.

■ Furthermore, when we consider the intent of the deceased as a testatrix we note that she gave the appellee the life estate in the Stewart property (all of which she considered her separate property) only until his remarriage. His devise was for a limited period, terminable by his remarriage if he married again before he died. She will be presumed to have had knowledge that the appellee, as her husband, was entitled to the use of the homestead so long as he resided there, whether in single status or as a married man. She therefore could not be conclusively held to have intended an election on his part, but contrarily her intent must be held to have been to vest him with an estate in the Stewart property which would be in addition to his estate in the homestead for the period of his single blessedness. This must be held to be her intent unless the will is not open to such a construction. From what we have said we believe it is clearly open to such a construction, grounded in her intent. Therefore the appellee was under no obligation to make an election, has not made an election and need not make an election. He is entitled to the use of the entire homestead and also to the estate given him in the

Stewart property by the terms of the will, there being no inconsistency in his enjoyment of the rights given him by law and the enjoyment of the devise made to him in the will. See the excellent article entitled The Texas Doctrine of Election in the Baylor Law Review, 1953, Vol. VI, page 84, et seq.

■ By the judgment decree appellant Nettie Mae Hodge prevailed against the appellee for the deceased's one-half or community interest in an automobile and other community property and funds existent at the date of deceased's death and in appellee's hands undistributed. The value of such community property was found by the court to be $2,500, and this appellant was awarded a judgment for $1,250. She has appealed from the judgment of the court in this respect, as well as the others and attacks the holding because it was not shown by either allegation or proof that such $2,-500 in property and funds was all the appellee had or received. It is true that appellee did not allege this or anything relating thereto, but he was under no duty to do so. The burden in this respect was upon the appellants, and appellants assumed the burden in their pleadings. The evidence certainly failed to show that the appellee had more than $2,500 worth of property and funds. If there actually was anything lacking in evidence upon the matter the appellants are not in position to complain, for theirs was the burden and problem of proof. 17 Tex.Jur., p. 318, sec. 94; Haley v. Gatewood, 1889, 74 Tex. 281, 12 S.W. 25.

All the other points upon which appellants predicate this appeal relate to procedural matters. During the course of the testimony of the president of the bank, appellants' witness, upon the transaction whereby the Wilson property was purchased following the loan of the $8,000 to Mrs. Ellis by the bank for the purpose, the appellants sought to get into the record evidence that the bank "looked" to her and not to her husband for the payment of the note. The court refused to allow the testimony. The appellants did adduce testimony from this witness that he, acting for the bank, required the appellee to sign the note and

deed of trust securing the loan "pro forma", and after it got into the record the court sustained an objection to such testimony in that respect and it went out of the record. Appellants contend that error resulted from each act of the court.

■ Neither the note nor the deed of trust appeared on their faces to have been signed by the appellee "pro forma". The legal rights of the bank appeared from the face of the instruments to have established a preservation of every remedy against the appellee thereby as would have been preserved against his wife. The instruments were not under any character of attack which would require a legal construction, but had they been there was shown no occasion for modification of their plain terms. Furthermore, the evidence was inadmissible for the further reason that it would be immaterial whatever the intent of the bank might have been. The intent of importance to establish was the intent, along with the agreement, if any, of the appellee and his wife that she was to receive the Wilson property as her separate property.

■ In connection with the transaction on the Wilson property purchase the bank had referred the matter to its attorney for an opinion and instructions, and the attorney had rendered a written title opinion containing instructions or suggestions. In this opinion the attorney had pointed out to the bank that it should require the signature to the note and deed of trust by the appellee as well as his deceased wife. The appellants attempted to introduce the opinion, or the part thereof which set out the basis on which the appellee's signature should be required, for the purpose of demonstrating that appellee was required to sign the note and deeds of trust pro forma only. The trial court excluded the writing, to which action the appellants have assigned error. It is noted from the attorney's opinion which is embodied in a bill of exceptions that he had examined the record of title upon the Stewart property and also upon the Walker property, deeds to which recited that the deceased was deeded these properties as her separate property. With-

out question, in so far as this case is concerned, the attorney rendering the opinion did assume that these properties actually belonged in their entirety to the deceased as her separate property. Such appeared to be fact in so far as record title appeared. The attorney was on the stand and available to testify as to any admission which might have been made to him by the appellee to the fact that appellee so recognized the ownership of these properties, had he been able to so testify. He did not so testify. Only from appellee could the attorney have obtained information he could rely on extraneous to the record of title. Testimony of the attorney from his title examination on property is not evidence at all of fact. Whether the record shows title is a question of law. Brackenridge v. Claridge & Payne, 1898, 91 Tex. 527, 44 S.W. 819, 43 L.R.A. 593; Campbell v. Hart, Tex.Civ.App., Fort Worth 1953, 256 S.W.2d 255, error refused n. r. e.; Cross v. Thomas, Tex.Civ.App., Fort Worth 1953, 264 S.W.2d 539, application for writ filed. The same thing would apply to his written title opinion. If his instructions or recommendations concerning the closing of any particular transaction were give pursuant to and as result of record title examination, then no proper foundation would be laid for the introduction of such as evidence. Furthermore, nowhere in the attorney's written opinion and instruction is there any requirement made for pro forma signature of the appellee.

■ Over appellants' objections the court allowed the appellee to testify and state the reason why separate bank accounts were kept by him and his wife. Appellee testified in response to the question that separate accounts were kept for business reasons, so that either he or his wife could get money from his or her account as the case may be without bothering the other. Irrespective of the propriety of the question and the admissibility of an answer thereto we fail to see how the appellants could possibly have been prejudiced. Texas Rules of Civil Procedure, rule 434.

■ The same thing would be true as to the testimony of the appellee that he "sup-

posed" that the property which his wife sold in Decatur, Texas, the latter part of 1945 or early part of 1946 was her separate property. The same thing would be true as to the testimony of the appellee that he "didn't suppose" his deceased wife put in any of her own separate funds in the transaction of the purchase of the Stewart property.

 The following question was asked on cross-examination of the appellee: "Isn't it true the reason you didn't read the deeds is because you didn't put any money into them and you paid no money on them and she bought this property and paid for it out of her own separate funds, and if you had spent any money on them you would have read those deeds, wouldn't you?" To this question the appellee answered: "I might have; I suppose I would have." The appellee's counsel objected and moved that the question and answer be stricken for the reason that the question was misleading and confusing. The court sustained the objection. The appellants have assigned error resulting from the court's action.

While it is true that the question asked was misleading and confusing, the answer of the witness discloses that by his answer he actually was stating that "I might have, indeed I suppose I would have read the deeds if I had spent any money on them." It is noted that the questioning which elicited the answer took place at a time when the appellee's deposition was being taken prior to the time of the actual trial, and it was from the deposition that the appellants were introducing the evidence. The witness' answer constituted evidence having something less than the strength of an admission that the actual reason he did not read the deeds was because he had not spent any part of the money constituting the consideration recited to have been paid upon property. The answer only tends to show what the witness "supposed" he would have done under certain circumstances. Under provisions of T.R.C.P. 434, in order for procedural errors of this character to occasion a reversal they must be such that they were both reasonably calculated to cause and

probably did cause the rendition of a judgment which would have been otherwise rendered but for their occurrence. The evidence from the deposition was only a small part of the evidence from appellee upon the matter in question, and all his other testimony was strongly contradictory of the admission which was almost, but not quite, made in his answer to the question in the deposition. We do not believe that the court's action in sustaining the objection to this evidence could possibly have occasioned his entry of the judgment he did enter, and that he would not have entered it had he allowed the question and answer to remain in the record. It must be remembered that the court was the trier of the facts in this case as well as of the law.

The judgment is affirmed.

RENFRO, J., not participating.