COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-388-CV
 
NORMA FERGUSON                                                                   
APPELLANT
V.
LARRY JAMES FERGUSON AS                                                     
  APPELLEE
INDEPENDENT EXECUTOR OF THE
ESTATE OF L.J. FERGUSON, JR.,
DECEASED
------------
FROM PROBATE COURT NO. 1 OF TARRANT COUNTY
------------
OPINION
------------
This appeal is from a declaratory
judgment regarding a surviving widow's ownership rights, as well as her
constitutional and statutory homestead interest, in the marital home devised to
her by her deceased husband's will. We reverse and render in part, and remand in
part.
FACTUAL AND
PROCEDURAL BACKGROUND
Norma Ferguson married L.J.
Ferguson, Jr. on February 12, 1993. L.J. Ferguson, Jr. died on December 21,
1998. By his will, L.J. devised Norma the marital home, which was his separate
property, located at 5605 Lowrie Road, Colleyville, Tarrant County, Texas. Norma
had resided in the Colleyville home from the time she married L.J. until his
death, and has continued to occupy the home and to pay taxes on and maintain the
property until the present. He devised several other tracts of land and mineral
interests, along with his residuary estate, to his children by former marriages.
Larry James Ferguson, L.J.'s son by
a prior marriage, as independent executor of L.J.'s estate, filed an inventory,
appraisement, and list of claims with the probate court on June 11, 1999,
listing tracts of land in Oklahoma and Arkansas and mineral interests, as well
as the Colleyville property, cash, and investments, as separate property of the
deceased. On July 7, 1999, Norma filed a complaint against the inventory,
claiming that it should have characterized certain cash and investments,
including mutual fund dividends of $196,108, timber sale proceeds of at least
$300,000, and household belongings valued at $7,000, as community, rather than
separate, property.
On May 9, 2000, Norma filed a
demand for an accounting. On June 28, 2000, the executor filed a first amended
inventory, appraisement, and list of claims, still listing the mineral interests
and the Colleyville property under the heading of separate real property, and
recharacterizing only a small portion of the cash and investments as community
property. The house was valued at $117,200; the total value of the estate listed
on the amended inventory was $781,782.
On July 25, 2000, the parties
appeared for trial on Norma's complaint against the inventory regarding the
disputed characterization of the items of cash and investments as the decedent's
separate property. After several hours of negotiations, the parties reached a
settlement agreement, the terms of which were dictated orally into the record.
On October 25, 2000, the probate court signed an agreed judgment.
Reciting that the parties announced
they had "reached an agreement for the resolution of Norma Ferguson's
Complaint and her claims against the estate," the agreed judgment stated
that "all matters of fact and issues in controversy were submitted to the
Court for its ruling." The agreed judgment awarded Norma the sum of
$167,944.14 from the estate, ordered that her complaint be dismissed with
prejudice, and provided in the fifth paragraph that Norma Ferguson "shall
have no further claim" against the Estate of L.J. Ferguson, Jr. or the
property of the Estate of L.J. Ferguson, Jr.
On January 30, 2001, after the
agreed judgment was signed, the executor's attorney sent a letter to Norma's
attorney, making demand on Norma, for the first time, that she vacate the
residence for sale and distribution of the proceeds to the remaining heirs. The
letter claimed that, pursuant to the terms of the settlement and agreed
judgment, Norma had relinquished all claims against the Colleyville property
devised to her, including the right of occupancy. The executor also took the
position in the letter that, by filing her complaint against the inventory,
Norma had elected to challenge the will and, pursuant to the "in
terrorem" clause of the will, had relinquished the devise to her of
the Colleyville property.(1)
On March 6, 2001, the executor
filed a Petition for Declaratory Relief and For Possession of Real Property,
claiming that, by the terms of the agreed judgment, or alternatively, by her
contest of the inventory, Norma had no valid claim to the Colleyville property,
including any right of occupancy, and he sought that she be ordered to vacate
and surrender control of the property. Norma counterclaimed, asking the court to
declare that the house belonged to her pursuant to the devise by the will or,
alternatively, for reformation based on mutual mistake, because the agreed
judgment was not intended to include the Colleyville property. Norma further
asserted that, as the surviving widow of the decedent, she be declared to have a
life estate pursuant to Article XVI, section 52 of the Texas Constitution and
sections 282 through 285 of the Texas Probate Code, providing for a homestead
right to a surviving spouse.
In a trial to the court, Norma and
the executor, as well as their respective attorneys and expert witnesses who had
been present at the prior proceedings, testified as to the negotiations and
their conflicting beliefs as to what was intended by the agreed judgment. The
probate court entered a declaratory judgment that the executor was entitled to
recover title and possession of the Colleyville property, ordered Norma to
vacate the property, and awarded the executor his reasonable attorney's fees.
By its findings of fact and
conclusions of law, the court found that the terms of the agreed judgment were
not ambiguous, that those terms included the Colleyville property, that by the
agreed judgment Norma exchanged any interest she had to the property of the
estate for the sum paid and received of $167,944.14, and that, by her approval
of the agreed judgment and her testimony that it reflected her agreement, she
waived her homestead rights. The trial court further concluded that the estate
was entitled to immediate possession and title to the Colleyville property.
APPLICATION OF LAW
TO FACTS

 
 Interpretation of Agreed Judgment

In her first two issues, Norma
challenges the trial court's findings and conclusions that, by the terms of the
agreed judgment, the estate was entitled to possession and title to the
Colleyville property and that she waived her homestead interest in that
property. Norma contends that the trial court erred in its interpretation of the
agreed judgment as relinquishing her vested ownership right to the property as
devisee under the will, and complains that there is legally and factually
insufficient evidence to support the finding of waiver of the homestead
interest. Because the issues of ownership and the homestead right of a surviving
spouse present separate questions governed by different legal principles, we
address each issue separately.

 
 Ownership of the
 Colleyville Property
 

Norma first contends that the
agreed judgment unambiguously resolved only the claims she had made in her
complaint against the inventory to the effect that certain cash and investments
should be characterized as community property, because those were the only
matters in controversy in the proceeding culminating in the agreed judgment.
Norma also argues that the agreed judgment's reference to "no further
claims against the estate or property of the estate" meant simply that she
would make no additional claim against the estate as to any other property that
she did not already have. Because the will had devised the Colleyville property
to her, she argues, she already owned it, and needed to make no
"claim" for that property. Alternatively, Norma contends that the
agreed judgment is unclear and ambiguous, in that the term "claim" as
used in the first paragraph of the document refers only to the claims she was
making by her complaint against the inventory, and it is unclear whether the
same term used in the fifth paragraph of the agreed judgment applies only to
those claims or to any other claim that might be made regarding any property of
the estate.
In response, the executor argues
that the agreed judgment is not ambiguous and that Norma's agreement that she
would have "no further claim" against the property of the estate
included the Colleyville property because the agreed judgment referenced
"real" as well as personal property described in the first amended
inventory, which expressly listed the Colleyville property. The executor further
responds that it is immaterial what claims Norma made in her complaint against
the inventory because the agreed judgment is not limited to the claims in
controversy at that time, but extends to "any further claim" against
the estate or property of the estate and would, therefore, include any
"claim" she might have to ownership of the Colleyville property.
An agreed judgment should be
construed in the same manner as a contract. Gulf Ins. Co. v. Burns Motors,
Inc., 22 S.W.3d 417, 422 (Tex. 2000). Whether a contract is ambiguous is a
question of law for the court. Columbia Gas Transmission Corp. v. New Ulm
Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). Our primary goal in construing
a written contract is to ascertain and give effect to the intent of the parties
as expressed in the instrument. Balandran v. Safeco Ins. Co., 972
S.W.2d 738, 741 (Tex. 1998); Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,
907 S.W.2d 517, 520 (Tex. 1995). If a written contract is so worded that it can
be given a definite or certain legal meaning, then it is not ambiguous. Nat'l
Union, 907 S.W.2d at 520; Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983).
An ambiguity does not arise simply
because parties advance differing interpretations of the terms of a contract. Columbia
Gas, 940 S.W.2d at 589; Forbau v. Aetna Life Ins. Co., 876 S.W.2d
132, 134 (Tex. 1994); Sun Oil Co. v. Madeley, 626 S.W.2d 726, 727 (Tex.
1981). For an ambiguity to exist, the language of the contract must remain
uncertain or subject to two or more reasonable interpretations after applying
the pertinent rules of construction.
In determining the parties'
agreement, we are to examine all parts of the contract, and the circumstances
surrounding the formulation of the contract. Columbia Gas, 940 S.W.2d
at 589 (noting that court is to examine all parts of contract and circumstances
surrounding its formulation); Nat'l Union, 907 S.W.2d at 520 (stating
whether contract is ambiguous is determined by looking at contract as a whole in
light of all circumstances present when contract was entered); Forbau,
876 S.W.2d at 133. Only where a contract is determined to be ambiguous after
application of the rules of construction, may the courts consider parol evidence
of the parties' interpretations. Nat'l Union, 907 S.W.2d at 520; Sun
Oil Co., 626 S.W.2d at 732.
We begin with an examination of the
language of the agreed judgment. See Columbia Gas, 940 S.W.2d at 588.
The fifth paragraph of the agreed judgment states:

 Norma Ferguson "shall have
 no further claim . . . against the Estate of L.J. Ferguson, Jr. or the
 property of the Estate of L. J. Ferguson, Jr. discovered and disclosed to her
 prior to July 25, 2000. The property of the estate which is the subject of
 this order is as follows: 1.The real property and personal
 property described on the First Amended Inventory, Appraisement and List of
 Claims filed in this cause; . . . "
 (Emphasis added)

That paragraph of the agreed
judgment then lists "the subject of this order," as (1) the "real
property and personal property" described in the first amended inventory,
and goes on to specifically name each account and certificate of deposit
identified in the first amended inventory, but not the Colleyville property or
the mineral interests.(2)
The executor's position that Norma
exchanged any rights to ownership of the Colleyville property for payment of the
sum of $167,944.14 has superficial appeal because, while the agreed judgment,
itself, does not name the Colleyville property, it references "real"
as well as personal property described in the first amended inventory, which, in
turn, lists the Colleyville property. Our inquiry is not at an end, however. The
executor's proposed interpretation focuses on only one portion of the fifth
paragraph of the agreed judgment.
In interpreting a contract, we must
consider all of the provisions with reference to the entire contract; no single
provision will be controlling. Coker, 650 S.W.2d at 393; Cook
Composites, Inc. v. Westlake Styrene Corp., 15 S.W.3d 124, 132 (Tex.
App.--Houston [14th Dist.] 2000, pet. dism'd). As noted by Norma, the
first paragraph of the agreed judgment specifically recites only that the
parties had reached an "agreement for the resolution of Norma Ferguson's
Complaint and her claims against the estate." Norma's complaint and
existing claims against the estate related only to the cash and investments. The
first paragraph also concludes with the statement that "all matters of fact
and issues in controversy" were submitted to the court for its ruling. The
Colleyville property ownership was never a "matter in controversy."
Additionally, the fifth paragraph concludes that she shall have "no further
claim" against the estate, and Norma's argument seems reasonable that the
term "no further claim" in the context of the agreement as a whole,
means only "no further claim" for the items in controversy in the
proceeding, absent broad language indicating an intent to release any other
claim of any nature, whatsoever.(3)
Most persuasively, as Norma further
points out, she did not have to make a "claim" for the Colleyville
property because it was already devised to her by the will. Section 37 of the
probate code provides that "when a person dies, leaving a will, all of his
estate devised or bequeathed by such will . . . shall vest immediately in the
devisees and legatees of such estate," subject only to payment of the
testator's debts. Tex. Prob. Code Ann. § 37 (Vernon Supp. 2003); Kelley v.
Marlin, 714 S.W.2d 303, 305 (Tex. 1986) (op. on reh'g). This is because
"there is never a time when title is not vested in someone." Bailey
v. Cherokee County Appraisal Dist., 862 S.W.2d 581, 584-85 (Tex. 1993) (op.
on reh'g).
The executor argues that Norma
would nevertheless still be required to make a claim for ownership because he
has not yet executed a deed to her of legal title. We disagree. After a will is
admitted to probate it becomes a "muniment of title until set aside in some
lawful manner." White v. White, 142 Tex. 499, 179 S.W.2d 503, 505
(1944). A right to the property devised is conferred on the devisee as
effectively as if the transfer had been made in the form of a deed by the
testator. Youree v. Pires, 5 S.W.2d 178, 179 (Tex. Civ. App.--Waco
1928, writ ref'd). The executor has never challenged the devise of the property
by the will to Norma.
Because title to the Colleyville
property vested in Norma immediately upon L.J.'s death, Norma cannot reasonably
be viewed as having a "claim" against the estate or against property
of the estate for the Colleyville property because she already holds equitable
title to it, with the estate merely holding legal title as trustee. Tex. Prob.
Code Ann. § 37; Bailey, 862 S.W.2d at 584; Kelley, 714 S.W.2d
at 305; Gorham v. Gates ex rel. Estate of Badouh, 82 S.W.3d 359, 365
(Tex. App.--Austin 2002, pet. denied); Longaker v. Evans, 32 S.W.3d
725, 737 (Tex. App.--San Antonio 2000, pet. withdrawn) (en banc); Am. Fin.
& Inv. Co. v. Herrera, 20 S.W.3d 829, 832-33 (Tex. App.--El Paso 2000,
no pet.). Indeed, a "claim" for ownership of the Colleyville property
is being made by the executor on behalf of the estate, not Norma.
We conclude that the agreed
judgment is capable of being given only one reasonable, definite, and certain
legal meaning, that Norma's ownership of the Colleyville property was not
intended by the parties to be given up by her in the settlement as consideration
for the payment to her of the sum of $167, 944.14, as a matter of law. Our
conclusion is reinforced by the evidence of circumstances surrounding the
settlement and agreed judgment, including Norma's testimony, confirmed by that
of the executor, that she had lived in the Colleyville house since her marriage
to the decedent, that she continued to live in the house thereafter, that
she--rather than the estate --maintained it and paid the taxes on the property
after the decedent's death, and that no demand was ever made by the estate for
possession of the house until after the agreed judgment. Moreover, as noted,
neither the devise of the property to Norma by the will nor her ownership was
ever a matter "in controversy" in the proceedings or the negotiations
leading up to execution of the settlement.
Malcom E. Walker, Jr., CPA for the
estate, testified he prepared estate tax returns for the estate, including an
amended return filed after the agreed judgment, and was asked to appear as an
expert witness for the estate in the prior proceedings. The returns he prepared,
including the amended return filed after the agreed judgment, listed the
Colleyville property as passing to Norma and belonging to her. The amended
return, filed after the agreed judgment, was signed by the executor. The amended
return took both the Colleyville property and the amount paid in
settlement as deductions.
Walker testified that he had no
documentation or other information that the property changed hands at the time
of the agreement. Although it was the executor's opinion that it did, Walker
deals with "fact." He saw no documentation to indicate that there was
a change of title. He could use a written contract as documentation but stated
"I don't have it." He was given a list of actual things that
transpired that he could go by for the amended return, and was supplied no
information that the house was being given up by Norma as part of the agreed
judgment.
Jason Wiley, an attorney and CPA,
testified he had been hired by Norma as an expert witness for and also attended
the prior proceedings. The dispute, he said, was over whether certain bank
accounts and stock were community property. He had studied voluminous documents
and was ready to testify that the estate could not carry its burden of tracing
those assets as separate property. He was involved in and present during all of
the negotiations as a sounding board. The negotiations concerned who was going
to get what stock and accounts. He testified that there was no discussion about
the Colleyville property. The issue was "never looked at." The whole
suit, Wiley said, concerned the bank accounts and stock, and all of the numbers
came from the evaluation of those assets. The amount paid to Norma specifically
came from and was tied directly to the accounts and stock.
Don Ferry, an attorney and CPA who
represented Norma in the prior proceedings, testified that the dispute centered
around the characterization of accounts and stock as community property in the
prior proceedings. The negotiations were primarily "number crunching"
between Walker and Wiley to settle that dispute. The house was "never,
never" an issue in the litigation. There was "[a]bsolutely not"
any discussion about the house that day. It was already Norma's. Consideration
for the payment to her was that she would make no further claim as to the
matters in controversy.
As to the reference in the agreed
judgment to "real property," Ferry pointed out that the stocks and
accounts were each specifically listed in the judgment whereas the Colleyville
property was not. The "homestead" was not in dispute; that was why it
was not listed. In response to opposing counsel, he testified: "And you
even told me, 'she is already getting the house; what more does she want?'"
"There was - - there was no disputed claim about the homestead at all by
anyone, by either the estate or by Norma." The attorney for the estate did
not testify, except as to attorney's fees. The executor testified, but even he
did not testify that there was any discussion during the negotiations about the
Colleyville property being included in the settlement and agreed judgment.
We hold that the trial court erred
in concluding, under the unambiguous terms of the agreed judgment, that the
estate is entitled to ownership and title to the Colleyville property. We
sustain Norma's first issue as to ownership and title of the Colleyville
property.

 
 The Homestead Interest
 

By her first two issues, Norma
challenges the legal and factual sufficiency of evidence to support the trial
court's finding that, by her approval of the agreed judgment and her testimony
that the agreed judgment reflected the agreement of the parties, she waived her
homestead right in the Colleyville property.
A surviving spouse retains the
right to use and occupy the homestead so long as he or she elects to do so. Tex.
Const. art. XVI, § 52; Tex. Prob. Code Ann. § 283 (Vernon 1980). This right
continues as long as the surviving spouse uses or occupies the property, or
until he or she abandons that right. Moore v. Moore, 89 Tex. 29, 33
S.W. 217, 218 (1895); Copeland v. Tarrant Appraisal Dist., 906 S.W.2d
148, 151 (Tex. App.--Fort Worth 1995, writ denied). A surviving spouse may
remain on the homestead premises, even though the homestead was the separate
property of the deceased spouse. Copeland, 906 S.W.2d at 151.
Furthermore, the surviving spouse's right exists even if the decedent has willed
the property to another. Copeland, 906 S.W.2d at 151.
The homestead right may be waived. Williams
v. Williams, 569 S.W.2d 867, 870 (Tex. 1978); Hunter v. Clark, 687
S.W.2d 811, 815 (Tex. App.--San Antonio 1985, no writ). Waiver is defined as an
intentional relinquishment of a known right. United States Fid. & Guar.
Co. v. Bimco Iron & Metal Corp., 464 S.W.2d 353, 357 (Tex. 1971). The
key element to waiver is intent. ASI Technologies, Inc. v. Johnson Equip.
Co., 75 S.W.3d 545, 548 (Tex. App.--San Antonio 2002, pet. denied) (quoting
Sedona Contracting, Inc. v. Ford, Powell & Carson, Inc., 995 S.W.2d
192, 195 (Tex. App.--San Antonio 1999, pet. denied). The intent to waive may be
either expressly made or inferred from intentional conduct that is inconsistent
with an intent to claim the right. Tenneco Inc. v. Enterprise Prods. Co.,
925 S.W.2d 640, 643 (Tex. 1996).
Once it attaches, the homestead
right is presumed to continue, and one asserting waiver must plead it and prove
it by affirmative evidence. See Estate of Casida, 13 S.W.3d 519, 521
(Tex. App.--Beaumont 2000, no pet.) (holding party asserting abandonment has
burden of proof). That burden is a "heavy" one. Id. To
establish waiver, there must be proof of "clear, unequivocal, and decisive
acts" showing an intent to waive. Langley v. Jernigan, 76 S.W.3d
752, 756 (Tex. App.--Waco 2002, pet. filed).
In light of our disposition of
Norma's first issue that she retains ownership of the property as the devisee
under the will of the decedent, we also necessarily sustain her first two issues
to the extent that she challenges the trial court's finding that she waived her
constitutional and statutory homestead right in the Colleyville property. Even
if Norma did not retain legal ownership of the Colleyville property, however,
she would still retain her constitutional and statutory homestead right to use
and occupy the property because there is no evidence that she intended to waive
it.

 In Terrorem
 Clause

In her fourth issue, Norma
challenges the trial court's conclusion of law that Larry James Ferguson, by
filing the petition for a declaratory judgment, did not violate the in
terrorem clause of L.J.'s will. Conclusions of law may not be challenged
for factual sufficiency, but may be reviewed as a matter of law to determine
their correctness based on the facts. Forbis v. Trinity Universal Ins. Co.,
833 S.W.2d 316, 319 (Tex. App.--Fort Worth 1992, writ dism'd).
L.J.'s will contained an in
terrorem clause revoking a devise "to any person claiming to be my
heirs at law, or any devisees or legatees under this will," who sought to
attack, oppose, or set aside any devise made under the will or to change the
testamentary plan. Larry contended that Norma violated this provision by filing
her complaint against the inventory.(4) 
Norma claimed that Larry violated it by filing the declaratory judgment action
and seeking to evict her from the house and return the house to the estate. The
trial court concluded that neither party violated the in terrorem
clause.
The purpose of an in terrorem
or "no-contest" clause is to dissuade devisees of a will from
challenging the bequests made therein. Veltmann v. Damon, 696 S.W.2d
241, 246 (Tex. App.--San Antonio), aff'd in part and rev'd on other grounds
in part, 701 S.W.2d 525, 527 (Tex. 1985). If the purpose of a suit
involving a will is to thwart the testator's intention, the forfeiture clause
should be effectuated. Id.; Hodge v. Ellis, 268 S.W.2d 275, 287 (Tex.
Civ. App.--Fort Worth 1954), aff'd in part and rev'd on other grounds in
part, 154 Tex. 341, 277 S.W.2d 900 (1955).
In determining whether either party
violated the in terrorem clause, we are guided by the rules of
interpretation of such clauses that they are to be strictly construed and that
forfeiture is to be avoided if possible. Sheffield v. Scott, 662 S.W.2d
674, 676 (Tex. App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.). A
breach of the clause will be found only where the acts of a beneficiary or
devisee clearly fall within the express terms. Gunter v. Pogue, 672
S.W.2d 840, 842 (Tex. App.--Corpus Christi 1984, writ ref'd n.r.e.).
The only devise to Norma under the
will was the Colleyville property. Norma's complaint did not seek to change that
devise or the testamentary plan of the decedent. Instead, her complaint was
against the inventory to obtain and protect her community property
interest in cash and investments that the estate had allegedly improperly
characterized as separate property. Thus, the trial court properly concluded
that her complaint did not violate the in terrorem clause.
Larry, the son of the decedent by a
previous marriage, was an heir and also one of a number of devisees named in the
will, but we disagree with Norma's contention that he violated the in
terrorem clause by filing the petition for declaratory judgment asking the
probate court to determine that Norma retained no interest in the Colleyville
property devised to her in the will. The in terorrem clause only
applies to persons who claim to be heirs, devisees, or legatees. Larry did not
file the petition in his individual capacity as an heir or devisee, but in his
official capacity as executor of the estate to recover possession and title of
the property so that it could be sold and distributed as a part of the estate.
Moreover, Larry sought an
interpretation of the terms of an agreed judgment reflecting a settlement
agreement between Norma and the estate, rather than seeking to contest the
validity of the will or to attack, modify, or void a provision of the will. We
decline to interpret the clause as extending to a declaratory judgment
proceeding brought by a representative of an estate in his official capacity to
interpret a settlement agreement and agreed judgment entered into in that
capacity on behalf of the estate, even though he may also be an heir or devisee.
See, e.g., Conte v. Conte, 56 S.W.3d 830, 832 (Tex.
App.--Houston [1st Dist.] 2001, no pet.) (holding that beneficiary,
acting in role as co-trustee, did not violate in terrorem clause by
bringing action to remove other co-trustee). We overrule Norma's fourth point.

 Attorney's Fees

The executor sought attorney's fees
pursuant to the Uniform Declaratory Judgment Act. Tex. Civ. Prac. & Rem.
Code Ann. § 37.009 (Vernon 1997). The trial court awarded Larry attorney's fees
for services rendered through trial, awarded additional amounts for appeal, and
denied recovery of attorneys' fees to Norma. By her third issue, Norma
challenges the award of attorneys' fees to the executor as supported by legally
and factually insufficient evidence. She also challenges the failure of the
trial court's award to the executor for appellate attorney's fees to make such
fees conditional upon success in this court. She further prays that, upon
vacating and denying relief awarded to the executor, she be awarded her
attorney's fees as proved at trial or for reversal and remand for further
proceedings consistent with this court's ruling. In her fifth issue, Norma
contends that the trial court erred by awarding the executor recovery of costs.(5)
Because we have determined that the
judgment of the trial court must be reversed and rendered in favor of Norma, we
also hold that the judgment of the trial court awarding attorney's fees and
costs to the executor and in refusing to award attorney's fees and costs to
Norma should be reversed and remanded for further proceedings.
CONCLUSION
We reverse the trial court's
judgment to the extent that it declares that the estate of L.J. Ferguson, Jr. is
entitled to ownership of the property located at 5605 Lowrie Road, Colleyville,
Tarrant County, Texas. We reverse the trial court's judgment to the extent that
it divests Norma Ferguson of her homestead right in the Colleyville property. We
render judgment in favor of Appellant Norma Ferguson that she is entitled to
ownership of the real property located at 5605 Lowrie Road, Colleyville, Tarrant
County Texas, as well as possession and occupancy of that property pursuant to
Article XVI, Section 52 of the Texas Constitution. We reverse the judgment of
the trial court awarding attorney's fees and costs to Larry James Ferguson as
executor of the estate of L.J. Ferguson, Jr., and refusing to award attorney's
fees to Norma Ferguson, and remand those issues to the trial court for further
proceedings.(6)
 
                                                                      
ANNE GARDNER
                                                                      
JUSTICE
 
PANEL A: CAYCE, C.J.; DAY and
GARDNER, JJ.
               
CAYCE, C.J. concurs without opinion.
DELIVERED: April 24, 2003

1.  The term "in terrorem," in the
context of wills, refers to a devise or bequest given on condition that the
beneficiary will not dispute the validity or disposition plan of the will. In
re Estate of Hamill, 866 S.W.2d 339, 346 (Tex. App.--Amarillo 1993, no
writ).
2.  The fifth paragraph of the agreed judgment
provides, in full:

        
 IT IS ORDERED that Norma Ferguson shall have no further claim, including but
 not limited to a claim for attorneys fees, against the Estate of L.J.
 Ferguson, Jr. or the property of the Estate of L.J. Ferguson, Jr. discovered
 and disclosed to her prior to July 25, 2000. The property of the estate which
 is the subject of this order is as follows: 1. The real property and personal
 property described on the First Amended Inventory, Appraisement and List of
 Claims filed in this cause; 2. Merrill Lynch Account 593-30641; 3. Bank of
 Delight, Nevada County Branch, Certificate of Deposit #1432660320; 4. Bank of
 Blevins Certificate of Deposit #4227; 5. Bank of Prescott Certificate of
 Deposit #10737; 6. Chase Bank of Texas Certificate of Deposit #32426581020; 7.
 Chase Bank of Texas Certificate of Deposit #3240007444; 8. Chase Bank of Texas
 checking account held in the name of L.J. Ferguson, Jr. with a balance of
 approximately $22,000.00 on the date of his death; and 8.[sic] Chase Bank of
 Texas Individual Retirement Account held in the name of L.J. Ferguson with a
 balance of approximately $19,400.00 on the date of his death; 9. 1712 shares
 of General Electric common stock held in the name of L.J. Ferguson, Jr. This
 order shall not apply to property or income which a) was part of the community
 property estate of L.J. Ferguson, Jr. and Norma Ferguson and b) is discovered
 by either party after July 25, 2000.
 
 3.  Although releases often cover only claims
 existing at the time of execution, a valid release may encompass unknown
 claims and damages that develop in the future. Compare Keck, Mahin &
 Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 20 S.W.3d 692, 698
 (Tex. 2000) (holding broad release of claims attributable to professional
 services extended to malpractice claims even though recitals primarily
 addressed unpaid fees), and Mem'l Med. Ctr. of E. Tex.v. Keszler, 943
 S.W.2d 433, 435 (Tex. 1997) (holding broad-form mutual release of all claims
 "related to" relationship of doctor with hospital in proceeding for
 corrective action for tampering with documents sufficient to release
 defendant's claim for exposure to toxic substance), with Victoria Bank
 & Trust Co. v. Brady, 811 S.W.2d 931, 937-38 (Tex. 1991) (holding
 release of bank from any and all claims or causes of action attributable to
 "above described loan transaction" not applicable to claims arising
 out of separate transaction based on separate line of credit).
 4.  Larry asserted that Norma had invoked the in
 terrorem clause of the will by filing the complaint against the
 inventory, appraisement, and list of claims. As a result, Larry contended that
 Norma had relinquished all claims to the house, including the right of
 occupancy.
 5.  In her fifth issue, Norma also asserts that the
 evidence does not support the trial court's findings of fact and conclusions
 of law that support the final judgment, that the trial court erred by omitting
 and refusing to make amended or additional findings of fact and conclusions of
 law requested by Norma, and that the trial court erred by denying Norma relief
 on her counterclaim. Because of our resolution of Norma's other issues, it is
 unnecessary to address these claims.
 6.  The Final Judgment also awarded the executor
 $1,000 in mediation fees. Norma does not challenge that award on appeal;
 therefore, it is not before us.